IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **COREY COMMODORE,** ) | |
| ) | |
|        **Petitioner,** ) | |
| ) | |
| **vs.** ) | **CIVIL NO. 13-444-CJP**[1] |
| ) | |
| **J.S. WALTON,** ) | |
| ) | |
|        **Respondent.** ) | |

## MEMORANDUM AND ORDER

**PROUD, Magistrate Judge:**

Petitioner Corey Commodore, an inmate in the Federal Bureau of Prisons ("BOP") incarcerated at USP-Marion, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the BOP's determination regarding the commencement date of his federal sentence. For the reasons set forth below, the Petition is denied.

## FACTUAL BACKGROUND

On April 14, 2005, while on parole in the Commonwealth of Kentucky for armed robbery, Corey Commodore was arrested by local authorities in Lexington, Kentucky and charged with firearms violations, criminal trespassing, and fleeing/evading the police (Doc. 14-1, p. 3, Doc. 1-1, p. 6). On July 2, 2005, federal authorities indicted Commodore on charges related to the same incident

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (Doc. 20).

(Doc. 14-1, p. 3). The Commonwealth of Kentucky then formally revoked Commodore's parole on July 13, 2005 (Doc. 14-1, p. 3), and due to the federal prosecution, dismissed the state charges against Commodore (Doc. 14-1, p. 3).

On August 8, 2005, because Commodore was in the custody of Kentucky serving his parole revocation sentence, the United States District Court for the Eastern District of Kentucky issued a writ of habeas corpus ad prosequendum so that Commodore could be taken into temporary federal custody to proceed with the federal charges against him (Doc. 14-1, pp. 9–10). Commodore appeared on August 29, 2005 in the Eastern District of Kentucky for his arraignment pursuant to the writ ad prosequendum (*See* Doc. 14-1, pp. 9–10). Several months later, Commodore pleaded guilty to one count of felon in possession of a firearm and ammunition, and one count of possession of a firearm with an obliterated serial number (Doc. 14-1, p. 11). On February 3, 2006, Commodore was sentenced to a term of 57-months imprisonment and three years of supervised release (Doc. 14-1, pp. 11–16). His federal sentence was ordered to run consecutive to any prior sentence (Doc. 14-1, pp. 11–16).

The writ ad prosequendum required Commodore to be returned to state custody upon completion of the federal proceedings (Doc. 14-1, pp. 9–10). However, federal authorities mistakenly transferred Commodore to the Federal Transfer Center in Oklahoma City where he was designated to serve his federal sentence at the Federal Correctional Institution in Terre Haute, Indiana ("FCI-Terre Haute") (Doc. 1; Doc. 14-1, p. 4). Commodore arrived at FCI-Terre Haute

on March 8, 2006 (Doc. 1; Doc. 14-1, p. 4).

Less than two weeks after his arrival at FCI-Terre Haute, the prison staff discovered the mistake—Commodore was in federal custody pursuant to the writ ad prosequendum, and therefore still in the primary custody of the Commonwealth of Kentucky (Doc. 14-1, p. 4). On March 22, 2006, Commodore was released from the writ for transportation back to the Kentucky Department of Corrections to complete his state sentence (Doc. 1; Doc. 14-1, pp. 4, 7). The United States Marshal Service then filed a detainer with the Commonwealth of Kentucky (Doc. 1; Doc. 14-1, pp. 4, 17).

On June 29, 2011, Commodore was released from the Kentucky Department of Corrections on parole to the federal detainer (Doc. 1; Doc. 14-1, p. 4). He was sent to the United States Penitentiary in Marion, Illinois where he is presently incarcerated (Doc. 14-1, p. 4). The BOP computed Commodore's federal sentence as commencing on June 29, 2011 (Doc. 14-1, p. 4). The BOP also determined that Commodore should not receive credit toward his federal sentence for any of the time he spent in custody from the date of his state arrest on April 14, 2005 through the date he was paroled from state custody on June 29, 2011 because he received credit against his state sentence for that time (Doc. 14-1, pp. 4, 17, 18).

**PROCEDURAL BACKGROUND**

On May 27, 2010, Commodore filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241 in the Eastern District of Kentucky challenging the computation of his state sentence (*See* Doc. 11-2). That petition was dismissed without prejudice for failure to exhaust his administrative remedies (Doc. 11-2).

On September 8, 2011, Commodore filed a second § 2241 petition in the Southern District of Illinois challenging the computation of his federal sentence. *Commodore v. Roal*, Case No. 11-cv-818-DRH (S. D. Ill.). That petition was also dismissed without prejudice for failure to exhaust his administrative remedies.

On May 8, 2013, after exhausting his administrative remedies (*see* Doc. 1-1, pp. 1-12), the present § 2241 action was filed (Doc. 1). Commodore argues that, in accord with 18 U.S.C. § 3585(a), his federal sentence commenced on March 8, 2006, the day he was received at FCI- Terre Haute. Commodore further argues that his federal sentence could not be interrupted by the government so as to require him to serve it in installments. In other words, his federal sentence commenced on March 8, 2006 and continued to run during the period when he was returned to state custody, between March 24, 2006, and June 29, 2011. The essence of Commodore's argument is that while his federal sentence was supposed to run consecutive to his state sentence, his mistaken designation and delivery to FCI-Terre Haute converted his federal sentence to run concurrent to his state sentence. As a result, Commodore argues that his federal sentence has been served in its entirety and requests the Court to order his immediate release from prison.

**DISCUSSION**

The authority to calculate a federal prisoner's period of incarceration for the sentence imposed, and to provide credit for time served, is delegated to the Attorney General, acting through the Bureau of Prisons. *United States v. Wilson,* 503 U.S. 329, 335 (1992). In instances, such as Commodore's, where the prisoner believes the BOP has erred in its calculation of his federal sentence, the prisoner can challenge the execution of his sentence by bringing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Romandine v. United States,* 206 F.3d 731, 736 (7th Cir. 2000).

**A.   The BOP Did Not Err In Determining That Commodore's Federal Sentence Commenced on June 29, 2011**

Commodore's first argument is that the BOP erred in determining the date on which his federal sentence commenced. The BOP determined that Commodore was not received into federal custody, and therefore his federal sentence did not commence, until June 29, 2011—the date he was paroled from his state sentence and transferred to the federal authorities pursuant to the federal detainer. Commodore, however, claims that he was actually taken into federal custody, and his federal sentence commenced, on March 8, 2006—the date he was mistakenly delivered to FCI-Terre Haute (Doc. 1). The Court finds that Commodore's argument is meritless; it was rejected long ago by the Seventh Circuit and it is also contrary to the BOP's governing policies.

Under 18 U.S.C. § 3585(a), a federal sentence does not commence until the defendant "is received in [federal] custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).  *See also Binford v. United States*, 436 F.3d 1252, 1255 (10th Cir. 2006) ("A federal sentence does not commence until a prisoner is actually received into federal custody for that purpose.")

It is undisputed that Commodore was in the primary custody of the Commonwealth of Kentucky following his arrest in April 2005 on state charges. *E.g., United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005) ("As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person.")

It is also undisputed that Commodore remained in the primary custody of the Commonwealth of Kentucky when he was temporarily transferred to federal authorities for the federal proceedings pursuant to a writ of habeas corpus ad prosequendum.  *Jake v. Herschberger*, 173 F.3d 1059, 1062 n.1 (7th Cir. 1999) ("Because the receiving sovereign merely obtains limited jurisdiction over the 'borrowed' prisoner, the prisoner is still under the jurisdiction of the sending sovereign, and is considered to be in the custody of the sending sovereign not the receiving sovereign."); *Sinito v. Kindt*, 954 F.2d 467, (7th Cir. 1992) ("The issuance of the writ of habeas corpus ad prosequendum did not alter [the prisoner's] custody status. It merely changed the location of his custody for the sentence he was already serving."); *Flick v. Blevins,* 887 F.2d 778, 781 (7th Cir.

1989)(per curiam) (prisoner delivered on writ of habeas corpus ad prosequendum is simply "on loan" for prosecution by receiving authority, and sending authority "retains full jurisdiction" over prisoner).

The issue here is whether primary custody over Commodore was transferred from the Commonwealth of Kentucky to the United States after completion of the federal proceedings when Commodore was mistakenly delivered to FCI-Terre Haute instead of being returned to Kentucky. It was established long ago that the answer to this question is "no"—an error by federal authorities in failing to return a prisoner obtained by a writ ad prosequendum does not divest the sending sovereign of its primary custody over the prisoner. *See Flick v. Blevins*, 887 F.2d at 778, 782 (7th Cir. 1989); *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978).

When a prisoner is obtained by federal authorities pursuant to a writ ad prosequendum, he is not in federal custody but rather "on loan" from the sending state. *Flick*, 887 F.2d at 781. The sending state's primary custody over the prisoner continues uninterrupted until that state affirmatively relinquishes its jurisdiction. *Fisher v. Holinka,* 323 F.App'x 451, 453 (7th Cir. 2009) ("[O]nly the sending authority . . . can relinquish primary jurisdiction."); *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005) ("Primary jurisdiction continues until the first sovereign relinquishes its priority in some way" through release on bail, dismissal of charges, parole, or expiration of sentence).

Accordingly, an error by federal authorities in failing to return the prisoner as required by the writ does not divest the sending state of primary custody over the prisoner because the sending state has taken no affirmative action. *See Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978) ("Failure to [return] a prisoner does not alter that 'borrowed' status, transforming a state prisoner into a federal prisoner."). *See also Fisher v. Holinka,* 323 F.App'x 451, 453 (7th Cir. 2009) (holding the BOP's misclassification of prisoner as a "designated" inmate, which the BOP recognized and corrected twelve days later, did not strip Arizona of primary custody).

In turn, because the sending state retains primary custody over the prisoner, the federal government does not have the authority to commence the prisoner's federal sentence at that time. *See Flick*, 887 F.2d at 782 ("[T]he failure to return a prisoner obtained by the writ ad prosequendum does not mean that the federal sentence 'commences' . . . .") *See also United States v. Lemus-Rodriguez*, 495 F. App'x 723, 726 (7th Cir. 2012) ("[B]ecause the sending state retains primary jurisdiction over the prisoner, 'federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.'") (quoting *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998)); *Ray v. Bezy*, 190 F. App'x 502, 504 (7th Cir. 2006) (holding prisoner's federal sentence did not commence when he was prematurely delivered to BOP before his state sentence had expired; instead he "spent several weeks . . . as a 'guest' of the federal government"); *Binford v. United States*, 436 F.3d 1252,

1256 (3d Cir. 2006) (holding federal sentence did not commence when, after conclusion of federal prosecution, prisoner spent several weeks in BOP facility due to mistake of marshals service in delivering him there instead of returning him to state on expired writ of habeas corpus ad prosequendum).

The BOP has incorporated these principles into its governing policies. In Program Statement 5160.05, the BOP addressed the situation where an inmate is improperly designated to a federal correctional facility for commencement of his federal sentence when he should have been returned to, or remained in, state custody for the completion of a state sentence that must be served first. The BOP expressly instructed that when an inmate has been designated to a federal detention facility by mistake, "the federal sentence should be considered as *not* having commenced since transfer to the Bureau was in error and the prisoner should have been returned to the state after federal sentencing as a required condition of the federal writ" and "the federal J & C will be lodged as a detainer, through the USMS, with the state authorities." U.S. DEP'T OF JUSTICE, BOP PROGRAM STATEMENT NO. 5160.05 pp. 11–12, ¶ 10(g) (2003).

Here, the errors made by the federal authorities and the BOP in designating and delivering Commodore to a federal correctional facility when he should have been returned to Kentucky did not divest Kentucky of its primary jurisdiction. Furthermore, there is no evidence that Kentucky took any action to relinquish primary custody over Commodore before June 29, 2011, when Commodore was released on parole. For example, when Commodore was taken into federal

custody in August 2005 for federal prosecution, it was pursuant to a writ of habeas corpus ad prosequendum—indicating Kentucky considered Commodore as merely "on loan" to the federal authorities. Kentucky also credited Commodore's state sentence with the period of time from when he was sent out on the writ ad prosequendum until he was returned to the Kentucky Department of Corrections[2]—indicating Kentucky considered Commodore in its primary custody during that entire period, including the time he was mistakenly detained at FCI-Terre Haute.

In summary, the Commonwealth of Kentucky retained primary custody over Commodore while he was in temporary federal custody under the writ ad prosequendum. Kentucky did not relinquish its primary custody over Commodore until June 29, 2011 when Commodore was released on parole. As such, the federal government did not have the authority to place Commodore into federal custody for purposes of commencing his federal sentence prior to that time. Thus the BOP properly calculated Commodore's federal sentence as having commenced on June 29, 2011, the date he was received into exclusive federal custody for service of his federal sentence.

### B. The Common Law Rule Prohibiting "Installment Punishment" Does Not Apply Here

Commodore also argues that his federal sentence is in violation of the rule

---

[2] Commodore was temporarily transferred from the Kentucky Department of Corrections to federal authorities pursuant to a writ of habeas corpus ad prosequendum on August 29, 2005 (Doc. 14-1, p. 4). On March 24, 2006, he was released from the writ ad prosequendum and delivered to the United States Marshal Service for transportation back to the Kentucky Department of Corrections (Doc. 14-1, p. 4). It appears that Commodore was delivered to the Kentucky Department of Corrections on April 4, 2006 (Doc. 1; Doc. 14-1, p. 6).

that federal sentences must be served continuously and cannot be broken up into installments. There does exist a common law rule against "installment punishment" that prohibits federal officials from delaying the expiration of a sentence either by delaying commencement or by releasing a prisoner and then reimprisoning him. *Dunne v. Keohane,* 14 F.3d 335, 336 (7th Cir. 1994). However, the Court has already determined that Commodore's federal sentence did not commence until June 29, 2011, and he has indisputably served that sentence continuously since then. Therefore, the common law rule against installment punishment clearly does not apply here.

Nevertheless, even if the Court determined that Commodore's federal sentence commenced on March 8, 2006 as he claims, the common law rule against installment punishment still would not apply. According to Commodore, his federal prison term was interrupted by his state prison term, and because of the rule that a sentence must be served continuously absent some fault of the prisoner, the BOP was required to let his federal sentence continue to run; in other words, the BOP had to allow him to serve both sentences at the same time.

The rule against installment punishment is not a "get out of jail early card." *Free v. Miles*, 333 F.3d 550, 555 (5th Cir. 2003). Rather, the rule is aimed at preventing the government from indefinitely delaying the expiration of the defendant's sentence. *Dunne*, 14 F.3d at 336–37. *See also Free*, 333. F.3d at 554 ("[The rule's] sole purpose is to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his

sentence through releases and re-incarcerations.") In *Dunne*, an inmate's classification was changed from state prisoner, to federal prisoner, back to state prisoner, and then back to federal prisoner again for the purpose of having him finish his state sentence before serving his consecutive federal sentence. *Dunne*, 14 F.3d at 335–36. Because his sentences were to run consecutive to each other, and he had been in continuous custody the entire time, "with no release into the free community," his repeated reclassification did not result in a postponement of the date on which his last sentence would expire. *Id.* at 337. Because there was no postponement, there was no violation of the rule against installment punishment. *Id.*

Here, Commodore had to serve a state sentence and federal sentence, and the federal sentencing court specified that the federal sentence was to run consecutive to the state sentence. If Commodore's federal sentence commenced on March 8, 2006, then like the inmate in *Dunne*, Commodore was shuffled back and forth from state custody, to federal custody, then back to state custody, and then back to federal custody again for the purpose of finishing his state sentence before he finished serving his consecutive federal sentence.[3] However, because his sentences were to run consecutive to each other, and he had been in continuous custody since his arrest in April 2005 with no release into the free community,

---

[3] Following his arrest in April 2005, Commodore was in state custody serving his state sentence. Commodore was then in federal custody and his federal sentence commenced when he was designated and delivered to FCI-Terre Haute on March 8, 2006. Commodore resumed serving his state sentence on March 24, 2006 when he was released from the writ ad prosequendum and delivered to the United States Marshal Service for transportation back to the Kentucky Department of Corrections. Commodore then resumed serving his federal sentence on June 29, 2011 when he was paroled from his state sentence and returned to federal custody.

being shuffled between jurisdictions did not postpone the end of his federal sentence. Put differently, even if he was transferred to state custody for service of his state sentence after mistakenly serving a brief portion of his federal sentence, there is no danger that his total time of incarceration will be extended a single day beyond the time contemplated by the sentencing courts. See *Bintzler v. Gonzales*, 239 F. App'x 271, 275 (7th Cir. 2007); *Ray v. Bezy*, 190 F. App'x 502, 504 (7th Cir. 2006); *Binford v. United States*, 436 F.3d 1252, 1256 (10th Cir. 2006); *Free*, 333 F.3d at 553–55; *Dunne*, 14 F.3d at 337. Because the expiration of his federal sentence has not been postponed, there is no violation of the rule against installment punishment. That Commodore will serve his federal sentence "in two shifts between sovereigns rather than one is of no moment." *Free*, 333 F.3d at 555.

As the Tenth Circuit stated, while Commodore "would have us believe he has been sentenced to [extra time] because of the government's error, in reality, he has only been denied a windfall which would have been his because the government made an error which it quickly rectified." *Stroble v. Terrell*, 200 F. App'x 811, 817 (10th Cir. 2006). Because the rule against installment punishment does not apply here, Commodore is not entitled to credit on his federal sentence for time served in state custody.

## CONCLUSION

Corey Commodore's petition for habeas relief under 28 U.S.C. § 2241 (Doc.

1) is **DENIED**.  This cause of action is **DISMISSED with prejudice**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly.

    **IT IS SO ORDERED.**

    DATED:  January 14, 2014

s/ **Clifford J. Proud**
CLIFFORD J. PROUD
United States Magistrate Judge
